UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------x
                                :
ALLAN PALL,                     :
                                :
     Plaintiff,                 :
                                :
v.                              :   Civ. No. 3:03CV00842(AWT)
                                :
KPMG, LLP, JOSEPH T. BOYLE,     :
MICHAEL CONWAY, ANTHONY         :
DOLANSKI, and RONALD SAFRAN,    :
                                :
     Defendants, and            :
                                :
XEROX CORPORATION,              :
                                :
     Nominal Defendant.         :
                                :
-------------------------------x
```

## RULING ON MOTION TO DISMISS

     The plaintiff, Allan Pall ("Pall"), a beneficial owner of Xerox stock, brought this shareholder derivative action on behalf of Xerox Corporation ("Xerox") against KPMG, LLP, Joseph T. Boyle, Michael Conway, Anthony Dolanski, and Ronald Safran (the "KPMG Defendants") and nominal defendant Xerox.  The defendants have moved to dismiss the Derivative Complaint for lack of subject matter jurisdiction.  For the reasons set forth below, their motions to dismiss are being granted.

**I.  FACTUAL BACKGROUND**

    Pall initiated a similar action in this court, <u>Allan Pall v. KPMG Peat Marwick, et al.</u>, No. 3:02cv00854, on May 16, 2002.  On March 27, 2003, this court dismissed the action for lack of

diversity jurisdiction. The plaintiff then initiated this action on May 13, 2003, adding a contribution claim under the federal securities laws.

The Derivative Complaint sets forth six claims for relief. In Count I, the plaintiff alleges that the KPMG Defendants are liable to Xerox for contribution pursuant to the Securities Exchange Act and common law for potential losses in pending federal securities actions against Xerox and for fines and penalties paid to the Securities and Exchange Commission (the "SEC"). In Count II, the plaintiff alleges that the KPMG Defendants were negligent and breached their duties to Xerox. In Count III, the plaintiff alleges that the KPMG Defendants made material misrepresentations to Xerox. In Count IV, the plaintiff alleges that the KPMG Defendants breached contractual obligations to Xerox. In Count V, the plaintiff alleges that the KPMG Defendants breached their fiduciary duty to Xerox. In Count VI, the plaintiff alleges that Xerox has a right to indemnification from the KPMG Defendants.

KPMG served as Xerox's auditor from 1971 to in or around October of 2001. Conway, Boyle, Dolanski, and Safran are all former KPMG partners who worked at KPMG during the relevant period.

On April 11, 2002, the SEC filed a civil complaint against Xerox based on allegations that Xerox had issued false and

misleading financial statements from 1997 through 2000.  As a result of that suit, Xerox paid a $10 million fine to the SEC.  On January 29, 2003, the SEC filed a civil fraud action against the KPMG Defendants based upon KPMG's audits of Xerox from 1997 through 2000.  The plaintiff alleges that KPMG's audits of Xerox were "repeatedly used to fill a $3 billion gap."  (Derivative Complaint, at ¶ 14).  This improper accounting resulted in Xerox having to restate $6.1 billion of equipment revenue and $1.9 billion of pre-tax earnings for the period from 1997 to 2000.  The plaintiff alleges that "the KPMG Defendants were willing participants in the scheme."  (Id., at ¶ 22).

The plaintiff alleges that during the period at issue in the SEC action against Xerox, the KPMG Defendants represented that the audits were completed in conformity with professional standards, including Generally Accepted Auditing Standards ("GAAS").  The plaintiff also alleges that the KPMG Defendants represented to Xerox that its financial reporting was in compliance with Generally Accepted Accounting Principles ("GAAP").

As information concerning improper accounting practices at Xerox became public, purchasers of Xerox securities filed class action lawsuits against Xerox.  The plaintiff alleges that these suits have subjected Xerox to potential liability amounting to millions, or even billions, of dollars.

**II. LEGAL STANDARD**

The defendants have moved to dismiss the Derivative Complaint pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. "[T]he standards for reviewing dismissals granted under 12(b)(1) and 12(b)(6) are identical." Moore v. PaineWebber Inc., 189 F.3d 165, 169 n.3 (2d Cir. 1999). "[T]he court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff. The court may not dismiss a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." Jaghory v. New York State Dept. of Educ., 131 F.3d 326, 329 (2d Cir. 1997)(internal citations omitted).

**IV. DISCUSSION**

    **A. Ripeness Challenge to Federal Contribution Claim**

Article III of the United States Constitution requires that an action constitute a "case" or "controversy" before it can be heard by a federal court. To meet this requirement, a claim must "demonstrate sufficient ripeness to establish a concrete case or controversy." Thomas v. Union Carbide Agr. Products Co., 473 U.S. 568, 579 (1985); Rothenberg v. Stone, 234 F.Supp.2d 217, 220 (E.D.N.Y. 2002) ("[t]o be justiciable under Article III, courts have long recognized that claims must be ripe."). "[R]ipeness

doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Reno v. Catholic Social Services, Inc., 509 U.S. 43, 58 n.18 (1993). In considering whether a claim is ripe for review, courts should "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Laboratories v. Gardner, 387 U.S. 136, 149 (1967).  The rationale for the doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. . . ." Id. at 148.

When resolution of the claim depends on "nebulous future events so contingent in nature that there is no certainty they will ever occur," a controversy is not ripe for resolution. Thomas v. City of New York, 143 F.3d 31, 34 (2d Cir. 1998) (quoting In re Drexel Burnham Lambert Group Inc., 995 F.2d 1138, 1146 (2d Cir. 1993)).  When determining whether a claim is ripe for review, an important consideration is "whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated." A/SJ. Ludwig Mowinckles Rederi v. Tidewater Const. Co., 559 F.2d 928, 932 (1977) (holding that indemnity claim was not ripe where there was no finding of liability or settlement in other legal actions).

When a claimed injury is "contingent upon the outcome of a

separate, pending lawsuit," courts generally "dismiss claims as premature."  In re United Telecommunications, Inc., Securities Litigation, No. 90-2251-EEO, 1993 WL 100202, at *3 (D. Kan. Mar. 4, 1993)(dismissing claim as not ripe where the claim was contingent upon the outcome of other litigation); see also Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir. 1990) (dismissing claim as not ripe where injury was contingent upon outcome of pending state court litigation); Platronics, Inc. v. United States, No. 88 CIV 1892, 1990 WL 3202, at *1 (S.D.N.Y. Jan. 9, 1990) (applying New York law, court dismissed action for indemnity where damages were "speculative" until state court action was resolved).  Consistent with this line of cases, courts regularly dismiss contribution claims which are based on findings of liability and damages in a separate legal action.  See, e.g., In re Cendant Corp. Derivative Action Litigation, 96 F.Supp.2d 394, 397 (D. N.J. 2000) (dismissing contribution claim as not ripe even where Cendant had already set aside the proposed settlement amount because the settlement had not yet received the court's approval).

   The plaintiff brings a contribution claim pursuant to Section 21D of the Securities Exchange Act.  Under this section, Xerox only has a right to contribution against the KPMG Defendants if the trier of fact first finds that both that Xerox and KPMG are liable, and then "specifically determines that [the

KPMG Defendants] knowingly committed a violation of the securities laws." 15 U.S.C. § 78u-4(f)(2)(A). Moreover, the KPMG Defendants could not be liable for contribution unless Xerox has to make payment in excess of its proportionate share pursuant to § 78u-4(f)(4). Also, as the plaintiff recognizes, if there is a settlement in the related actions, contribution claims against settling parties are barred. See 15 U.S.C. § 78u-4(f)(7); Plaintiff's Memorandum Opposing the Motions to Dismiss Filed by Defendant KPMG LLP and Nominal Defendant Xerox Corporation on Subject Matter Jurisdiction Grounds ("Plaintiff's Opposition") (Doc. No. 62), at 14.[1] Thus, because there has been no determination of liability and damages in the related actions, the injury remains speculative. Furthermore, the right to contribution remains contingent upon the parties in the related actions not settling.

    The plaintiff points to a line of cases which he claims support his contention that contribution claims can be considered ripe before underlying liability is established. (See Plaintiff's Opposition, at 10-13). However, these cases address contribution claims made by third-party defendants or third-party

---

[1] The plaintiff argues that this bar is a reason to allow the plaintiff to bring the contribution action now, because it may not be available when the related actions are resolved. (Plaintiff's Opposition, at 13-15). However, the plaintiff cites no authority to support this position, which is contrary to Congress' intent as expressed in the plain language of § 78u-4(f)(7).

plaintiffs who are joined in the action in which liability will be determined.[2]  As the court notes in Ades v. Deloitte & Touche, Nos. 90 Civ. 4959(RWS), 90 Civ. 5056(RWS), 1993 WL 362364, at *16 (S.D.N.Y. Sept. 17, 1993), contribution claims can be brought in an underlying action pursuant to Fed. R. Civ. P. 14.  However, the availability of contribution claims in a related action has no bearing on the issue of the ripeness of the federal contribution claim brought in this action.  Here, because the plaintiff is attempting to bring a contribution claim which is contingent upon a finding of liability in the related actions, the injury (and availability of a contribution claim) depends upon the results in the related actions, making the contribution claim not ripe.[3]

### B. Discretionary Exercise of Supplemental Jurisdiction

---

[2] See Jordan v. Madison Leasing Company, 596 F.Supp. 707, 710 (1984) (third-party plaintiffs' contribution claims survived motion to dismiss before liability under Section 10(b) was determined); In re The Leslie Fay Companies, Inc,. Sec. Litig., 918 F.Supp. 749 (S.D.N.Y. 1996) (defendant filed cross-claims and third-party claims against plaintiff and officers and directors of the plaintiff; claims survived motion to dismiss, even before defendant was found liable); In re Crazy Eddie Securities Litigation, 802 F.Supp. 804 (E.D.N.Y. 1992) (defendant was allowed to assert claim for contribution against a third-party).

[3] Also, as the defendants point out, the plaintiff has cited no authority giving him a federal cause of action for contribution based on a fine paid to the SEC.  (KPMG LLP's Memorandum in Support of its Motion to Dismiss the Derivative Complaint (Doc. No. 50), at 3-4, n.5); Nominal Defendant Xerox Corporation's Memorandum of Law in Support of its Motion to Dismiss the Derivative Complaint for Lack of Subject Matter Jurisdiction ("Xerox's Memorandum") (Doc. No. 48), at 5, n.3.

The plaintiff argues that the court should exercise supplemental jurisdiction over the remaining state law claims.[4] However, 28 U.S.C. § 1367(a) only allows federal courts to entertain claims over which they do not have original jurisdiction where the court has original jurisdiction over at least one claim.  "Section 1367(a) is a broad grant of supplemental jurisdiction over other claims within the same case or controversy as long as the action is one in which the district courts would have original jurisdiction."  Exxon Mobil Corp. v. Allapattah Services, Inc., 125 S.Ct. 2611, 2620 (2005).

Before filing this action, the plaintiff attempted to bring a similar action in this court, which the court dismissed for lack of diversity jurisdiction.  Now, having added a federal claim for contribution that is not ripe, the plaintiff seeks to have his state law claims heard in this court.  The plaintiff will not be allowed to circumvent the requirements for jurisdiction by asserting an invalid contribution claim based on federal law.

---

[4] The plaintiff points to Common Fund for Non-Profit Organizations v. KPMG Marwick LLP, No. 96 Civ. 255(MGC), 1996 WL 551605 (S.D.N.Y. Sept. 27, 1996) as authority for this court to exercise jurisdiction.  (Plaintiff's Opposition, at 6-7). However, in Common Fund, there were two valid federal claims pertaining to one group of defendants, and the court exercised supplemental jurisdiction as to state law claims against another defendant.  The court had original jurisdiction as to two claims brought in the action.  Here, by contrast, there is no valid federal claim against any defendant.

**IV. CONCLUSION**

Accordingly, the defendants' motions to dismiss (Doc. No. 47 and Doc. No. 49) are hereby GRANTED.

The Clerk shall close this case.

It is so ordered.

Dated this 29th day of September, 2006 at Hartford, Connecticut.

                                                                    /s/AWT  
                                              Alvin W. Thompson  
                                   United States District Judge